# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEROY W. DADE, JR., | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 13-1381 |
| GAUDENZIA DRC, INC., *et al.* | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

YOHN, J.                                                                                                                           July 3, 2013

Plaintiff, Leroy W. Dade, Jr., brings this pro se civil rights action against defendants, Gaudenzia DRC, Inc. ("Gaudenzia"); Shakiya Drummond; Sharronna Holmes; Melvin Thompson; Erin Sutton; and Patricia O'Connor (collectively, "individual defendants"). I construe his complaint as alleging two causes of action under § 1983. First, he alleges that defendants denied him mental health treatment in violation of his right to be free of cruel and unusual punishment under the Eighth Amendment. Second, he alleges that the defendants violated his statutory rights under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. §§ 201 *et seq.*, by improperly disclosing confidential health records to unauthorized persons. Before me is defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for plaintiff's failure to state a claim. For the reasons set forth below, I will grant defendants' motion in part and deny it in part.

I.   **Factual and Procedural Background**

Gaudenzia is a non-profit private drug treatment facility. (Defs.' Mot. Dismiss ¶ 4.) Dade was housed there under pre-release status prior to his full release from prison on parole. He was a

resident at Gaudenzia from March 17, 2011, through June 15, 2011, in its "mental health facility." (*Id.*; Compl. at 3.) The individual defendants were employees of Gaudenzia during this time: Sutton and Drummond were Dade's in-house counselors; Thompson was his floor supervisor; Holmes was director of Gaudenzia's mental health program; Thompson was Dade's floor supervisor; and O'Connor was an "administrator." (Defs.' Mot. Dismiss ¶ 4.; Compl. at 2-5; Supplemental Exs., ECF No. 7, Ex. A.)

In April 2011, while still a resident at Gaudenzia, plaintiff began outpatient therapy at Intercommunity Action for his mental health needs. (*Id.* at 3; Supplemental Exs., Exs. B, C.) Sutton, his counselor, subsequently removed him from that group and assigned him to an outpatient treatment group in Roxborough, Pennsylvania. (Compl. at 3.) Dade was assigned a new counselor, Drummond, who accused him of noncompliance with "Sutton['s] recommendations and group registration at treatment in Rox[]borough." (*Id.*) He was thereafter assigned to outpatient therapy at the "JFK" treatment center in Philadelphia. (*Id.*) Plaintiff avers that he complained to Holmes about the "constant harassment and false accusations." (*Id.* at 5.) When she responded unfavorably, he appealed and "was denied" by O'Connor. (*Id.*)

Based on the above, Dade alleges that defendants "[c]onstantly den[ied] and delay[ed his] prescribed treatments for several weeks" and that he "was not allowed to see any psychiatrist/psychologist, nor receive refills of prescribed medications." (*Id.* at 3.) He also avers that Gaudenzia "staff members" released confidential health information to unauthorized family members. (*Id.*)

## II.  Discussion

### A.  Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[1] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[1] I note that Dade submitted exhibits after he filed the complaint (*See* Supplemental Exs., ECF 7). Furthermore, his response to the motion to dismiss contains facts outside of the complaint. This raises the question, what factual allegations I should consider?

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "a court may consider an undisputedly authentic document that a *defendant* attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Id.* (emphasis added). Some circuits allow a court, especially in the pro se context, to look to facts alleged in the plaintiff's response to resolve the motion to dismiss. *See, e.g.*, *Pratt v. Corr. Corp. of Am.*, 124 F. App'x 465, 466 (8th Cir. 2005) ("[T]he district court was required to consider the allegations not only in [plaintiff's] pro se complaint, but also in his motion to amend, his response to defendants' motion to dismiss, and the attachments to those pleadings."); *Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001) ("[I]t might be appropriate for a court to consider additional facts or legal theories asserted in a response brief to a motion to dismiss if they were consistent with the facts and theories advanced in the complaint."). However, district courts in this circuit have repeatedly declined to look beyond the complaint's allegations in this manner. *See Perna v. Tp. of Montclair*, No. 05-4464, 2006 WL 2806276, at *13 (D.N.J. Sept. 28, 2006) (citing *Commw. of Pa. ex. rel Zimmerman v. PepsiCo., Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (internal quotation marks omitted)); *Cherry v. City of Phila.*, No. 04-1393, 2004 WL 2600684, at *3 (E.D. Pa. Nov. 15, 2004) ("[A] party may not rely on new facts in submissions in response to a motion to dismiss to defeat the motion." (internal quotation marks omitted)).

I believe the latter course is better as a matter of procedural tidiness. A court is usually required to give leave to amend claims vulnerable to dismissal under Rule 12(b)(6). *See Phillips*, 515 F.3d 224, 245 ("[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile.") Thus, if a court determines that a plaintiff has failed to state a claim, the plaintiff can incorporate allegations from the response—along with other pertinent factual matter and exhibits—into an amended complaint. Thus, I will focus on the allegations in Dade's complaint to resolve the instant motion.

(2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint must contain sufficient factual matter to be plausible on its face. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"; a sheer possibility that a defendant acted unlawfully is not sufficient. *Id.*

Thus, the Third Circuit has developed a three-step approach. "First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (internal quotation marks and citations omitted). Since Dade is proceeding pro se, I construe his pleading liberally—his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

**B.    Application**

Defendants argue that plaintiff cannot maintain a § 1983 claim based on rights secured by HIPAA because HIPAA does not allow for a private right of action. With respect to the Eighth Amendment claim, defendants raise three arguments. First, all defendants argue that Dade has failed to allege sufficiently egregious conduct to constitute a deprivation of Eighth Amendment rights. Second, Gaudenzia argues that it is not liable because Dade does not allege a policy or custom that caused the constitutional violation. Third, each individual defendant moves for dismissal on the basis that Dade has not adequately specified his or her role in the deprivation.

4

i. **No private right of action based on HIPAA**

"While the Third Circuit has not specifically addressed the issue whether there is an express or implied private right of action under HIPAA, several other federal courts have held that there is no such right." *Rigaud v. Garofalo*, No. 04-1866, 2005 WL 1030196, at *3 (E.D. Pa. May 2, 2005) (collecting cases). But "the question whether a statutory violation may be enforced through § 1983 is a different inquiry from that involved in determining whether a private right of action can be implied from a particular statute." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 274 (2002). Nevertheless, "both inquiries have the same first step: determining whether a statute creates a private right." *Adams v. Eureka Fire Prot. Dist.*, 352 F. App'x 137, 138 (8th Cir. 2009) (citing *Gonzaga*, 536 U.S. at 285). The Eight Circuit in *Adams* pointed out that "[c]ourts have repeatedly held that HIPAA does not create a private right . . . ." *Id.* at 138-39 (collecting cases). "Since HIPAA does not create a private right, it cannot be privately enforced . . . via § 1983 . . . ." *Id.* Therefore, Dade cannot bring a private action to enforce HIPAA obligations, whether through the statute itself or through § 1983. This claim will be dismissed with prejudice.

ii. **Failure to allege deprivation of an Eighth Amendment right**

To state an Eighth Amendment deprivation based on medical mistreatment, a prisoner[2] must allege conduct egregious enough to constitute the "unnecessary and wanton infliction of pain," which is satisfied by conduct that manifests "deliberate indifference to [a prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Thus, "in order to establish a violation of [a prisoner's] constitutional right to adequate medical care, evidence must show (i) a

---

[2] Defendants have not argued that the standards developed in the prison context are inapplicable here. I see no reason to draw a distinction between this case and prison cases.

serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

Dade states in his complaint that "[t]he above mental health officials and non-officials and staff-members . . . [i]ntentionally and recklessly interfer[ed] with plaintiff[']s recommended treatments by constantly delaying and denying plaintiff[']s psychological and therapeutic treatments and medications." (Compl. at 4.) I presume that Dade, by using the phrase "the above," is referring to the individual defendants named in the complaint. Dade's medications were prescribed by mental health professionals. (*Id.*)

Intentionally withholding a prisoner's medication can certainly amount to "deliberate indifference." *See Estelle*, 429 U.S. at 104-05 (indicating that deliberate indifference standard met where prison guards "intentionally deny[] or delay[] access to medical care or intentionally interfer[e] with the treatment once prescribed.") Meanwhile, "[a] medical need is serious if it 'has been diagnosed by a physician as requiring treatment' . . . ." *Mitchell v. Beard*, 492 F. App'x 230, 236 (3d Cir. 2012) (quoting *Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003)). "A mental illness may constitute a serious medical need." *Johnson v. Beard*, No. 3:CV-08-0593, 2008 WL 2594034, at *12 (M.D. Pa. June 27, 2008) (citing *Inmates of the Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 763 (3d Cir. 1979)).

Plaintiff has averred that a psychologist prescribed him medication, and that Gaudenzia staff, for no apparent reason, interfered with his treatment. (Compl. at 4.) Accepted as true, these allegations state a claim under the Eighth Amendment. While the factual content of the complaint is somewhat sparse, Dade does state that the denial of care led to "psychotic

episodes."[3] (*Id.*) I reject defendants' initial argument that plaintiff has not alleged a deprivation of Eighth Amendment rights.

### iii. Failure to allege policy or custom

Having found that Dade has alleged the deprivation of a constitutional right, I must determine whether he has recourse to § 1983 for a remedy. Section 1983 provides, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ." Furthermore, "[t]o bring a § 1983 claim against a local government or government entity (including a private corporation . . . that is alleged to be acting under color of state law) for the actions of an employee of one of those entities, a plaintiff cannot rely upon respondeat superior liability, but he must show that the entity had a policy or custom that caused his deprivation of a constitutional right." *Defreitas v. Montgomery Cnty. Corr. Facility*, No. 12-3305, 2013 WL 1878842, at *4 (3d Cir. May 7, 2013) (unpublished table opinion) (internal citations omitted).

There is a "'two-path track to municipal liability,' based on either a municipal policy or custom that resulted in a constitutional violation. A 'policy' arises when a 'decisionmaker possessing final authority to establish municipal policy with respect to the action issued an official proclamation, policy, or edict.'" *Garcia v. City of Newark*, No. 08-1725, 2011 WL 689616, at *3 (D.N.J. 2011) (quoting *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir.

---

[3] The exhibits subsequently submitted by Dade indicate that he is a recovering cocaine addict who suffers from post-traumatic stress disorder and bipolar disorder. (Supplemental Exhibits, ECF No. 7, Ex. C.)

1996)). A custom is "a course of conduct that, although not specifically authorized by law, reflects 'practices of state officials [that are] so permanent and well-settled as to virtually constitute law.'" *Id.* (quoting *Beck*, 89 F.3d at 971) (alterations in original).

I will assume, without deciding, that Gaudenzia and its employees acted "under color" of state law for purposes of § 1983.[4] As noted above, Dade asserts that "mental health officials and non-officials and staff-members [named in the complaint] . . . [i]ntentionally and recklessly interfer[ed] with plaintiff[']s recommended treatments by constantly delaying and denying plaintiff[']s psychological and therapeutic treatments and medications." (Compl. at 4.) Dade further asserts "supervisory liability" under the theory that Gaudenzia supervisors "acted negligently and recklessly with regards to preventing the subordinates from violating plaintiff[']s rights." (*Id.*) But the complaint is devoid of any indication that a "policymaker" within Gaudenzia either acted in such a way as to establish policy or acquiesced in the actions of the employees so as to establish custom. *See Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) ("[I]t is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom."). I note that Dade's claim of supervisory liability is distinct from a claim that a sufficiently high-ranking Gaudenzia employee dictated a

---

[4] Defendants represent in their filing that Gaudenzia "contracts with Commonwealth to provide residential and mental health services as a Community Correction Facility to pre-release and paroled individuals." (Mem. Law. Supp. Mot. Dismiss at 7.) They note that the allegations in the complaint do not touch on the state actor requirement of § 1983, but they stop short of requesting dismissal on this ground. (*Id.*) Indeed, they cite *Outen v. Prialeau*—a case also involving Gaudenzia—in which the court stated that "the state actor analysis determination is more appropriately considered in a Motion for Summary Judgment." No. 12-4166, 2013 WL 1875042, at *2 (E.D. Pa. May 3, 2013) (citing *Schulgen v. Stetson School*, No. 99–4536, 2000 WL 352366, at *2 (E.D. Pa. Apr. 3, 2000)). Furthermore, Dade alleges that Gaudenzia is a "Community Correctional Facilit[y]." (Compl. at 4.)

8

policy or allowed a custom that caused the deprivation. *See Andrews*, 895 F.2d at 1478-1480. Because Dade has not identified an applicable policy or custom, or the policymaker responsible for its promulgation, his Eighth Amendment § 1983 against Gaudenzia must be dismissed.

### iv. Failure to allege individual defendants' roles in the deprivation

The individual defendants argue that the complaint does not specify how each employee acted to deprive Dade of his constitutional rights. Dade broadly states that the defendants named in the complaint "interfer[ed] with plaintiff['s] recommended treatments by constantly delaying and denying" his medications and therapy. (Compl. at 4.) He specifies that Sutton and Drummond unnecessarily shuttled him from one outpatient treatment group to another, which hindered his access to psychiatric therapy and medications. (*Id.* at 3.) He states that he complained to Holmes and O'Connor, who did not rectify the situation. (*Id.* at 5.) He also lists Thompson as a "supervisor" and then states that "supervisors acted negligently and recklessly with regards to preventing the subordinates from violating plaintiff['s] rights." (*Id.* at 2, 5.)

"A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Id.* I conclude that Dade has asserted "with appropriate particularity" the participation of Sutton, Drummond, Holmes, and O'Connor in the alleged deprivation of his constitutional rights. He alleges the first two were responsible for changing his outpatient treatment; the latter two "acquiesced" by rejecting Dade's complaint and knowingly failing to

correct the situation.

The individual defendants rely heavily on *Evancho v. Fisher*, 423 F.3d 347 (2005), in attempting to show that Dade's complaint is fatally nonspecific. I find that case inapposite. In *Evancho*, a demoted employee in Pennsylvania's drug crimes bureau sought to sue the attorney general of Pennsylvania. The plaintiff baldly asserted that her transfer "was carried out by underlings reporting directly to the attorney general and/or by the attorney general himself." *Id.* at 349. Such "conclusory, boilerplate language" was inadequate to state a claim; the "amended complaint merely hypothesize[d] that [the Attorney General] may have been somehow involved simply because of his position as the head of the Office of the Attorney General." *Id.* at 354-55. This was "not a reasonable inference" given the numerous levels of managerial hierarchy between the attorney general's office and the plaintiff's position at the bureau. *Id.* at 354.

Here, Dade has listed actions personally taken by Sutton, Drummond, Holmes, and O'Connor related to the alleged constitutional deprivation. However, Dade's blanket assertion that all named defendants interfered with his treatment, and his vague assertion that "supervisors" failed to prevent subordinates from violating his rights, is not enough to state a claim against Thompson. There is simply no concrete allegation of direct "personal involvement" or "actual knowledge and acquiescence" on the part of Thompson. Therefore, the Eighth Amendment claim against Thompson will be dismissed.

    **v.**     **Leave to amend**

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). This is true "even if the plaintiff does not seek

10

leave to amend." *Id*. The HIPAA claim fails as a matter of law; I dismiss it with prejudice because amendment would be futile.

As stated above, I will dismiss the Eight Amendment claim against Gaudenzia because plaintiff has not alleged that it had a policy or custom such that it could be held liable under § 1983. I will dismiss the Eighth Amendment claim against Thompson because Dade has not adequately alleged his personal involvement in the deprivation of Dade's rights. But defendants do not argue that amendment would be inequitable, and there is no indication of futility—Dade could possibly state a claim with more thorough factual averments. Therefore, the dismissal of the Eighth Amendment claims against Thompson and Gaudenzia will be without prejudice to plaintiff's right to file an amended complaint. I am sympathetic that Dade is a pro se plaintiff who is likely unfamiliar with the niceties of pleading a § 1983 claim. Should he choose to amend, he should incorporate all pertinent facts set forth in his response, as well as any other allegations that may substantiate his claim.

## III. Conclusion

For the reasons set forth above, I will grant defendants' motion in part and deny it in part. The HIPAA claim will be dismissed with prejudice. The Eighth Amendment claims against Gaudenzia and Thompson will be dismissed without prejudice. The motion is denied with respect to all other claims. An appropriate order follows.