IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|   |   |
|---|---|
| LEROY W. DADE, JR., | : |
| Plaintiff, | : CIVIL ACTION |
| v. | : NO. 13-1381 |
| GAUDENZIA DRC, INC., et al., | : |
| Defendants. | : |

**MEMORANDUM**

YOHN, J.                                                                                              January 7, 2014

Plaintiff, Leroy W. Dade, Jr. brings a *pro se* civil rights action against defendants, Gaudenzia DRC, Inc. ("Gaudenzia"), Shakiya Drummond, Sharronna Holmes, Melvin Thompson, Erin Sutton, and Patricia O'Connor (collectively, "defendants"). I construe Dade's complaint and supplemental complaint as claiming a cause of action under 42 U.S.C. § 1983, alleging that the defendants denied him mental health treatment in violation of his right to be free of cruel and unusual punishment under the Eighth Amendment and in violation of his due process rights. Before me is defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim and for failing to exhaust Gaudenzia's administrative remedies,[1] and Dade's response. For the reasons set forth below, I will grant defendants' motion.

---

[1] Pursuant to *Spruill v. Gillis*, "strictly speaking" the defendants' motion regarding plaintiff's failure to exhaust administrative remedies "should not have been captioned as a Fed. R. Civ. P. 12(b)(6) motion to dismiss, but as a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings, because [the Third Circuit has] held that failure to exhaust administrative remedies under § 1997e(a) is an affirmative defense. *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002). There is no material difference in the applicable legal standards, so for the sake of familiarity, we shall use the 'motion to dismiss' formulation of Fed. R. Civ. P. 12(b)." 372 F.3d 218, 223 (3d Cir. 2004); *Abdul-Aziz v. Nwachukwu*, 523 F. App'x. 128, 129 (3d Cir. 2013) (same).

**I  Factual and Procedural Background**

Dade, while a resident at the State Correctional Institute in Fayette, filed the complaint that is the basis for this action.  I construed that complaint as bringing two causes of action under 42 U.S.C. § 1983: (1) defendants denied Dade mental health treatment in violation of his right to be free of cruel and unusual punishment under the Eighth Amendment; and (2) the defendants violated Dade's statutory rights under the Health Insurance Portability and Accountability Act of 1996 ("HIPPA").  *Dade v. Gaudenzia DRC, Inc.*, No. 13-1381, 2013 U.S. Dist. LEXIS 94344, at *1 (E.D. Pa. July 8, 2013).

On May 17, 2013, the defendants filed a motion to dismiss Dade's complaint, which I denied in part and granted in part.  Dade's Eighth Amendment claims against the individual defendants Sutton, Drummond, and Holmes survived the motion.  Dade's Eighth Amendment claims against Thompson and Gaudenzia were dismissed without prejudice to Dade's right to file an amended complaint.  Dade's HIPPA claim was dismissed with prejudice.

On August 1, 2013 Dade filed a supplemental complaint adding new factual allegations in support of his Eighth Amendment claim against Thompson, and raising a new due process claim for Gaudenzia's violation of Dade's right to be free from cruel and unusual punishment and to receive medical treatment.[2]  On August 22, 2013 defendants renewed their motion to dismiss.  Dade responded on September 20, 2013.

On March 17, 2011, Dade was placed at Gaudenzia's mental health facility as a part of his incarceration. (Compl. 3, 4.)  The individual defendants were employees at Gaudenzia

---

[2] Dade's due process claim, first raised more than two years after his approximate release from Gaudenzia, is likely time-barred.  However, Dade's complaint does not state precisely when he was released from Gaudenzia.  Because the due process claim is based on the same factual allegations regarding the denial of medical treatment as Dade's Eighth Amendment claim, I will dismiss for failure to exhaust administrative remedies as discussed below.

2

during Dade's residency.  (Compl. 2, 3.)  Sutton and Drummond were Dade's in-house counselors; Thompson was his floor supervisor; and O'Connor was an administrator.  (Compl. 1-2, 3.)  In April 2011, while still a resident at Gaudenzia, Dade began mental health outpatient therapy at Intercommunity Action.  (Compl. 3., Supplemental Exs. B, C.)  Sutton, Dade's counselor, subsequently removed him from Intercommunity Action and assigned him to an outpatient treatment group in Roxborough, Pennsylvania.  (Compl. 3.)  Dade was also assigned a new counselor, Drummond, who accused him of noncompliance with "Sutton['s] recommendations and group registration at treatment in [Roxborough]."  (Compl. 3.)  He was thereafter assigned to outpatient therapy at the "JFK" treatment center in Philadelphia.  (Compl. 3.)

Gaudenzia provides a grievance procedure to address official complaints from its residents.  The procedure, as outlined in the Resident Handbook, states in full:

> You have the right to utilize the Grievance Procedure regarding any treatment decisions, disciplinary actions, or violations of your rights.  All grievances must be in writing and given to the Director of your program within five (5) business days of the incident you are grieving.  The Director will respond to your written grievance within five (5) business days of its receipt, at which point, a meeting will be scheduled with you, the Director, and other involved parties, (i.e. Counselor, etc.)  During this meeting, you will have the opportunity to explain your grievance and discuss the actions taken.  A decision regarding your grievance will then be rendered by the Program Director within five (5) business [days] of this meeting.  You may further grieve the decision of the Program Director to the Director of Clinical Services, by placing your grievance in writing and forwarding such to him within five (5) business days of receipt of the Program Director's decision.  The Director of Clinical Services will respond to your grievance and schedule a meeting with you.  The Director of Clinical Services will render a decision within five (5) business days of the meeting, at which point, you will receive notice of his decision.

(Mot. to Dismiss, Ex. E.)[3]

---

[3] Defendants quote a different grievance procedure in their memorandum.  (Defs.' Mem. 6.)  However, this grievance procedure addresses grievances regarding Gaudenzia's "rules and responsibilities and/or action(s) taken as a result of their violation."  Dade has not alleged that he was denied medical attention because he violated a rule or failed to meet a responsibility.  The general grievance policy, applicable to "any treatment decisions, disciplinary actions, or violations of [residents'] rights," seems the more appropriate policy.  While the defendants do not quote the policy in their motion or memorandum, it is included in the exhibits attached to the motion.  (Mot. to Dismiss, Ex. E.)

On May 3, 2011, Dade filed a "Resident Statement of Grievance" with Gaudenzia, naming Drummond and Thompson as the "staff involved" in the grievance. (Mot. to Dismiss, Ex. C.) Dade lists Thompson, O'Connor, Holmes and Drummond as all being copied on the grievance. (Mot. to Dismiss, Ex. C.) Because the content of Dade's grievance is significant to my analysis below, I quote it in its entirety and without alteration or correction:

> (1) I feel I'm constantly being Harrassed & Mis-directed for non-perticular reasons. (2) I apply my most significant and best efforts to be the best I am, in all areas of my life. (3) I assist and help on my floor responsibilities. Attend recommended groups & N/A MEETING WITH NO PROBLEMS YET BEING FALSELY ACCUSED OF NON-PARTICIPATION – CAN'T UNDERSTAND.

(Mot. to Dismiss, Ex. C.) The grievance does not contain any of the allegations in Dade's complaint or supplement concerning denial of mental health treatment. In response to this grievance, Dade was told he "was trying to get [Holmes'] staff in trouble." (Compl. 4.) Dade appealed the grievance to O'Connor and was denied. (Compl. 4.)

Thompson, Dade's floor supervisor, also told Dade that "his [g]rievance was weak." (Pl.'s Suppl. Compl. 2.) He further informed Dade that had he filed an "Inter-Community form," rather than a grievance, he would have been permitted to leave the facility. (Suppl. Compl. 2.) Dade claims that "Thompson was upset because [Dade] had put in a grievance on Gaudenzia staff members." (Suppl. Compl. 7.) Thereafter, "when [Dade] requested medications to be renewed, his request was denied over [an] extended period of time." (Suppl. Compl. 7.)

**II  Legal Standard**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. In deciding a motion to dismiss, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled

4

to relief." *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements will not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Id.*

When faced with a motion to dismiss, "courts generally consider only the allegations in the complaint, exhibits attached to the complaint[,] and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Third Circuit has held, however, that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Id. See also*, *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004) (finding that the court may consider the "indisputably authentic documents related to [plaintiff's] grievances" in a § 1983 claim to determine whether plaintiff exhausted administrative remedies). Accordingly, in addition to the complaint and supplemental complaint, I am free to consider Gaudenzia's grievance policy and the grievance Dade filed at Gaudenzia, which the defendants attached to their motion to dismiss.

**III  Discussion**

The defendants argue that Dade's complaint should be dismissed because he failed to exhaust the administrative remedies available to residents at Gaudenzia as required by the Prison Litigation Reform Act of 1995 ("PLRA"). 42 U.S.C. § 1997e *et seq.* Dade, in response, argues that he should be excused from failing to exhaust available administrative remedies because Gaudenzia officials either interfered with or failed to properly respond to his grievance. In the

5

alternative, Dade argues that he should be excused from the exhaustion requirement because he inferred from Gaudenzia's inadequate response to his grievance that he was prevented from using Gaudenzia's grievance procedure.  Dade's arguments are unavailing, and do not excuse his failure to exhaust Gaudenzia's available administrative remedies.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The plaintiff's status at the time he filed the complaint dictates whether he was a prisoner under the PLRA.  *Ahmed v. Dragovich*, 297 F.3d 201, 210 (3d Cir. 2002).  The language "with respect to prison conditions" broadly encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  *See also*, *Booth v. Churner,* 532 U.S. 731, 733, 740 (2001), (applying 42 U.S.C. § 1997e(a) exhaustion requirement to "prison conditions" involving plaintiff's alleged denial of medical treatment).

Exhaustion of all available remedies is mandatory.  *Booth*, 532 U.S. at 740; *Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000).  Exhaustion is required even when the relief sought cannot be granted through the available administrative process.  *Booth*, 532 U.S. at 740.  Courts have excused exhaustion in the limited circumstance where prison officials directly interfered with or impacted the petitioner's filing of a grievance.  *See, e.g., Brown v. Croak*, 312 F.3d 109, 113 (3d Cir. 2002) (holding that failure to timely exhaust is excused where prison officials instruct plaintiff to wait until internal investigation is complete prior to filing a formal grievance and, thereafter, never informed plaintiff that the internal investigation was complete).  However, courts have refused to excuse failure to exhaust because the plaintiff feared retaliation, *Pena-*

*Ruiz v. Solorzano*, 281 F. App'x. 110, 113 (3d Cir. 2008); or because the plaintiff was transferred to, and was incarcerated at, a different facility, *Williamson v. Wexford Health Sources, Inc.*, 131 F. App'x 888, 890 (3d Cir.), *Ball v. Bower*, No. 1:10-CV-2561, 2011 U.S. Dist. LEXIS 150548, at *14 (M.D. Pa. October 13, 2011); or because plaintiff was confused regarding his need to exhaust available administrative remedies, *Casey v. Smith*, 71 F. App'x. 916, 918 (3d Cir. 2003). Finally, "the PLRA requires 'proper exhaustion,' meaning that the prisoner must comply with all the administrative requirements and not merely wait until there are no administrative remedies 'available'" *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)).

Here, it is undisputed that Dade was a prisoner confined at the State Correctional Facility in Fayette when he filed his complaint claiming a violation of 42 U.S.C. § 1983 for the defendants' failure to provide medication and medical treatment while he was a resident at Gaudenzia. (Compl. 3, 7 and attached Statement of Claim.) Accordingly, under the PLRA, Dade must exhaust Gaudenzia's available administrative remedies before he can bring an action in federal court. *See, Ahmed*, 297 F.3d at 210 (plaintiff's status at the time he filed complaint dictates whether he was a prisoner); *Booth*, 532 U.S. at 733, 740 ("prison conditions" under PLRA include allegations of inadequate medical treatment). Further, the defendants offer, and Dade does not contest, that Gaudenzia did have an available administrative procedure as described above. (Mot. to Dismiss, Ex. E.) Dade knew of this procedure as evidenced by the grievance he filed on May 3, 2011. (Mot. to Dismiss, Ex. C.)

The defendants argue that Dade did not exhaust the administrative remedies available at Gaudenzia because he failed to fully appeal his grievance in accordance with Gaudenzia's policy. (Defs.' Mem. 6-7.) Dade argues, in response, that he should be excused from failing to

7

exhaust the administrative remedies because Gaudenzia staff interfered with his attempt to exhaust by threatening, restraining and punishing Dade in response to his filed grievance. (Resp. 3-4, Pl.'s Mem. 4-5.)  Dade's argument is unavailing, however, because Dade never grieved the medical complaints that are the factual basis for the instant suit at all. (Mot. to Dismiss, Ex. C.)

In his grievance Dade complains of being "harassed," "mis-directed" and falsely accused of not participating in required meetings. (Pl. Mot. Ex. C.)  However, even given a generous reading, the grievance could not possibly put Gaudenzia's staff on notice that Dade was complaining about his failure to receive medication or mental health treatment. *Williams*, 482 F.3d at 640 (quoting *Jones v. Bock*, 549 U.S. 199, 219 (2007)) ("the primary purpose of a grievance is to alert prison officials to a problem").  Thus, even if Dade had succeeded in appealing his May 3, 2011 grievance, exhausting all the available remedies at Gaudenzia, he would still be barred from bringing this suit because his original grievance never complained that defendants failed to provide him with medication or mental health treatment.  Because Dade never filed even one grievance regarding the medical complaints that are the basis for the instant suit, he cannot now claim that his failure to exhaust was due to defendants' interference with his attempts to exhaust.

A potential alternative reading of Dade's response is an argument that he failed to file a new grievance regarding his medical complaints because he believed Gaudenzia's grievance procedures were unavailable to him.  Accepting Dade's factual allegations as true, Gaudenzia did not properly address the May 3, 2011 grievance.  The policy required the director of Dade's program to respond to his grievance, and a meeting should have been scheduled between Dade, the director, and any other involved parties.  However, the only response Dade claims he received was an accusation from Holmes that he "was trying to get her staff in trouble" and that

he "should have used a[n] inter-comm. form," (Compl. 4.), and a statement from Thompson that the grievance was "weak."  (Suppl. Compl. 2.).  Further, he alleges no meeting was ever scheduled as required by the policy.  Gaudenzia's improper response to the May 3, 2011 grievance, according to Dade, "raise[d] an inference that he was prevented from utilizing the [Gaudenzia] [a]dministrative remedies," excusing his failure to exhaust those remedies.  This argument is also unavailing.

Even if Dade's assumptions were true, and Gaudenzia's staff would have handled a new grievance for Dade's medical complaints as inadequately as it handled the May 3, 2011 grievance, Dade was still required to exhaust Gaudenzia's grievance process.  Exhaustion is mandatory, and is required even when futile.  *Booth*, 532 U.S. at 740.  Nor can Dade's confusion regarding the availability of Gaudenzia's remedies excuse his failure to exhaust.  *Casey v. Smith*, 71 F. App'x. at 918.  Gaudenzia's grievance policy was both known to Dade and available to him as evidenced by the grievance he did in fact file.  Dade's argument that the grievance policy was unavailable merely because the Gaudenzia staff did not properly respond to his May 3, 2011 grievance does not excuse Dade's failure to exhaust.

Accordingly, Dade's claims against defendants are procedurally defaulted, pursuant to the PLRA, because Dade failed to exhaust Gaudenzia's available administrative remedies.  The complaint and supplement are dismissed with prejudice as any further amendment would be futile.

**IV Conclusion**

For the reasons set forth above, I will grant defendants' motion to dismiss.  An appropriate order follows.